# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>      Plaintiff,<br><br>v.<br><br>BRIAN HUDNALL,<br>[DOB: 12/28/1976]<br><br>      Defendant. | No. 20-00130-01-CR-W-RK<br><br>**COUNT ONE:**<br>***(Money Laundering Conspiracy)***<br>18 U.S.C. § 1956(h)<br>NMT 10 Years Imprisonment<br>NMT $250,000 Fine<br>NMT 3 Years Supervised Release<br><br>**FORFEITURE ALLEGATIONS:**<br>18 U.S.C. § 982(a) |

# I N F O R M A T I O N

THE UNITED STATES ATTORNEY CHARGES THAT:

## GENERAL ALLEGATIONS

At all times relevant to this Information:

1. Defendant BRIAN HUDNALL owned, operated or was the registered agent for DonDon LLC, formed on April 23, 2018, with an office listed as 118 N Conistor Lane, Suite B-134, Liberty, MO 64068.

2. Phillip Hudnall owned, operated or was the registered agent for the following businesses:

  a. BirdDog Oil Equipment, LLC, formed on February 25, 2019, with an office listed as 15621 W 87th Street Parkway Suite 262, Lenexa, KS 66219;

  b. Kansas Oil Reserve LLC (KOR), formed on June 1, 2017, with an office listed as 15621 W 87th Street Parkway Suite 262, Lenexa, KS 66219;

  c. Kansas Oil Reserve 2 LLC (KOR2), formed on August 26, 2018, with an office listed as 15621 W 87th Street Parkway Suite 262, Lenexa, KS 66219;

  d. Phayrn Resources Inc, formed on December 20, 2007, with an office listed as 15621 W 87th Street Parkway Suite 262, Lenexa, KS 66219.

3. Defendant BRIAN HUDNALL opened and had signatory power over the DonDon LLC bank accounts at Bank Liberty, account XX4541 and Pony Express Bank, Liberty, Missouri, account number XX9990.

4. Phillip Hudnall opened and had signatory power over the following bank accounts:

   a. BirdDog Oil Equipment LLC, Bank of America account number XX9601;

   b. Kansas Oil Reserves LLC, U.S. Bank account number XX2186;

   c. Kansas Oil Reserves 2 LLC, U.S. Bank account number XX2147; and

   d. Phayrn Resources, U.S. Bank account number XX1722.

## COUNT ONE

5. Paragraphs 1 - 4 of the General Allegations section of this Information are re-alleged and incorporated by reference as if fully set forth herein.

6. Beginning on or about January 2019, and continuing to at least on or about June 2019, the exact dates being unknown to the United States Attorney, in the Western District of Missouri and elsewhere, defendant BRIAN HUDNALL did knowingly combine, conspire, agree, and have a tacit understanding with Phillip Hudnall and others known and unknown to the United States Attorney to commit an offense against the United States, that is, to knowingly engage in monetary transactions by, through, and to a financial institution, affecting interstate or foreign commerce, that is wire transfers of United States currency, knowing that said transactions involved criminally derived property of a value greater than $10,000, such property having been derived from a specified unlawful activity, including but not limited to wire fraud, in violation of Title 18, United States Code, Section 1957.

## Manner and Means of the Conspiracy

7. Phillip Hudnall and his co-conspirators proposed an opportunity to high net worth individuals to invest in the purchase, refurnishing and sale of used oil equipment. Phillip Hudnall informed investors that their principal would be returned within nine months along with 20 - 30% interest. Phillip Hudnall outlined the process for the investors as follows:

- Our field service engineer or our contact at the large oil company reaches out to *BirdDog Business Group LLC* and informs us that the midsize company has a need for specific equipment that the large company currently has in inventory.

- *BirdDog Business Group LLC* reaches out to investors who are interested in loaning the funds in order to purchase and refurbish the equipment.

- After purchasing the equipment, it is immediately shipped to *National Oilwell Varco* where refurbishment usually takes 60-120 days.

- When refurbishment is complete, the equipment is shipped directly to the end buyer who has 30 days to pay the invoice for the equipment.

- Upon receipt of funds, we immediately wire or send a check to the investor.

8. Phillip Hudnall informed the investors that BirdDog had completed two successful transactions. Phillip Hudnall informed the investors that Completed Transaction 1 involved a loan of $244,000 with a loan rate of 30%. Phillip Hudnall represented that the loan was funded on August 16, 2018, and the transaction was completed on January 28, 2019. Phillip Hudnall represented that the principal of $244,000 was returned along with interest received of $73,200.

9. Phillip Hudnall informed the investors that Completed Transaction 2 involved a loan of $490,000 with a loan rate of 30%. Phillip Hudnall represented that the loan was funded

on September 5, 2018, and the transaction was completed on January 28, 2019.  Phillip Hudnall represented that the principal of $490,000 was returned along with interest received of $147,000.

10.  On or about January 28, 2019, Phillip Hudnall requested that BRIAN HUDNALL create documents as proof of the prior successfully completed transactions.  BRIAN HUDNALL executed a check on the DonDon Bank Liberty account XX4541 in the amount of $750,500, payable to STS LLC, an early investor in the "equipment refurbish" scheme.  The memo line on the check stated "Sale of Equipment" and was dated January 28, 2019.  DonDon's Bank Liberty XX4541 account was closed in November 2018.  Brian Hudnall was the sole signer on DonDon's Bank Liberty account XX4541.

11.  Also on or about January 28, 2019, BRIAN HUDNALL wrote a check on the closed DonDon Bank Liberty account XX4541, payable to Kansas Oil Reserves LLC in the amount of $378,200.  BRIAN HUDNALL also created and signed a memorandum from DonDon to Kansas Oil Reserves LLC which stated the check was your "proportionate share of funds from the sale of (2) Canrig Series 500 Top Drives."

12.  Two checks, which totaled $1,128,700, and the signed memorandum created on DonDon letterhead were sent to investors by Phillip Hudnall's partner in BirdDog as proof of the prior successful transactions.  In fact, no prior completed transactions occurred, and no monies were received from the sale of any oil equipment including any principal or interest.

13.  Phillip Hudnall transferred approximately $4.1 million from the BirdDog Oil Equipment LLC Bank of America account to the DonDon LLC Pony Express Bank account XX9990 in Liberty, Missouri.  Thereafter, BRIAN HUDNALL transferred approximately $4 million from the DonDon account at Pony Express Bank in Liberty, Missouri, to the Kansas Oil Reserve to the U. S. bank account.

14. BRIAN HUDNALL retained approximately $58,000 of the investor monies in the DonDon account. BRIAN HUDNALL wrote two checks to himself that totaled $34,000, paid over $15,000 in American Express charges, withdrew approximately $8,000 in cash, and spent approximately $2,000 on personal use items such as groceries, restaurants, and retail related purchases.

All in violation of Title 18, United States Code, Section 1956(h).

## **FORFEITURE ALLEGATIONS**

15. The allegations of Count One of this Information are re-alleged and fully incorporated herein for the purpose of alleging forfeiture to the United States of America of certain property, real and personal, in which the defendant has an interest, pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

16. Upon conviction of any violation of Title 18, United States Code, Sections 1956 and 1957, the defendant shall forfeit to the United States any property, real or personal, constituting, or derived from, or traceable to proceeds the person obtained directly or indirectly pursuant to Title 18, United States Code, Sections 982.

17. The property subject to forfeiture includes, but is not limited to, the following:

   a. Money Judgment and Other Property Involved In or Traceable to the Offenses:

   Any interest or proceeds traceable thereto of at least $58,000 representing the proceeds obtained by defendant BRIAN HUDNALL, in that such sum in aggregate is involved in, or is derived from, proceeds traceable to the offense set forth in Count One;

## SUBSTITUTE ASSETS

18. If the property described above as being subject to forfeiture as a result of any act or omission of the defendant:

    a. cannot be located upon the exercise of due diligence;

    b. has been transferred or sold to, or deposited with a third person;

    c. has been placed beyond the jurisdiction of the Court;

    d. has been substantially diminished in value; or

    e. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the above-forfeitable property or to seek return of the property to the jurisdiction of the Court so that the property may be seized and forfeited.

All pursuant to the provisions of Title 18, United States Code, Section 982(a)(1), and the procedures outlined in Title 21, United States Code, Section 853(p).

Timothy A. Garrison
United States Attorney

By: */s/ Kathleen D. Mahoney*

Kathleen D. Mahoney
Assistant United States Attorney

Dated: 6/17/2020
Kansas City, Missouri